# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re: MARTIN D. FRANTZ and CYNTHIA M. FRANTZ,<br><br>Debtors.<br>_____<br>MARTIN D. FRANTZ and CYNTHIA M. FRANTZ,<br><br>      Appellants,<br><br>      v.<br><br>IDAHO INDEPENDENT BANK, and DAVID P. GARDNER, Chapter 7 Trustee,<br><br>      Appellees. | Case Nos. 2:18-cv-00188-DCN<br>2:18-cv-00189-DCN<br>2:18-cv-00190-DCN<br>2:18-cv-00348-DCN<br><br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

On March 26, 2018, Debtors Martin Frantz and Cynthia Frantz ("Appellants" or

"Frantz"[1]) filed a Notice of Appeal with the Ninth Circuit Bankruptcy Appellate Panel

_____

[1] Martin Frantz appears to have been the sole author of Appellant's opening brief. Dkt. 21. The brief is written in first person and Martin Frantz was the only individual to sign the document. On reply, while still written mostly in first person, there are occasional references to "the Frantzs," and both Martin and Cynthia Frantz signed that brief. While this organizational matter does not materially affect the outcome of the appeal, the Court notes two things. First, Martin Frantz is not an attorney and, therefore, can only represent himself. That said, the Court will construe these appeals as raised by "Appellants" (i.e. both Martin and Cynthia Frantz). Second, the Court will refer to the Frantzs in the singular ("Frantz")—if and when necessary—for stylistic reasons and because those instances are almost solely related to statements or positions taken by Martin.

("BAP"). Dkt. 1-1, at 2–4.[2] Because Appellants appealed three separate orders generated

by three separate motions in their underlying bankruptcy case,[3] the BAP divided the appeal

into three separate cases. Dkt. 1-9, at 1. On April 12, 2018, Idaho Independent Bank ("IIB")

sent notice to the BAP that it was exercising its right to have the appeals heard by the

District Court rather than the BAP. Dkt. 1-8, at 11–16. On April 19, 2018, the BAP

transferred all three cases back to the District of Idaho. Dkt. 1-9, at 2–3.

In the interest of judicial economy, the Court consolidated the three cases into one

case on May 31, 2018. Dkt. 7.

On July 1, 2018, Appellants appealed two other orders from the bankruptcy case to

the BAP. On July 13, 2018, IIB again sent notice to the BAP that it was exercising its right

to have the appeals heard by the District Court rather than the BAP. Case No. 2:18-cv-

00348, Dkt. 1-2. On August 3, 2018, the BAP transferred the cases back to the District of

Idaho.[4] Case No. 2:18-cv-00348, Dkt. 1-9, at 2–3. Because the subject matter of this appeal

related to the underlying bankruptcy case—and consequentially the consolidated cases—

---

[2] Unless otherwise noted, all docket references herein are to case 2:18-cv-00188—the lead case in these consolidated appeals. Additionally, while the applicable bankruptcy record has been provided to the Court in case 2:18-cv-00188 (Dkt. 23), for simplicity, rather than citing to this case's docket which in turn cites to the bankruptcy docket, the Court will cite directly to the bankruptcy docket. Each citation is to material that has been designated as part of the appellate record.

[3] Bankruptcy Case 2:11-Bk-21337-TLM.

[4] It is not entirely clear, but it appears the BAP separated the case into two separate appeals as Appellants were appealing two separate orders from the bankruptcy case. When the BAP transferred these matters back to the District of Idaho, however, the District of Idaho consolidated them into one case. Regardless of how the appeals were couched at the BAP or in the District of Idaho, the Court's decision today addresses all orders Appellants seek review of from their bankruptcy case.

the Court consolidate this case with the previously consolidated appeals. Case No. 2:18-cv-00348, Dkt. 3. The parties briefed all issues simultaneously in Case 2:18-cv-00188.

On November 5, 2018, Appellants filed their opening brief. Dkt. 21. On January 9, 2019, Appellee IIB filed its brief. Dkt. 23. Appellee, Chapter 7 Trustee, David P. Gardner, joined in IIB's brief. Dkt. 24. On Feb 28, 2019, Appellants filed their reply. Dkt. 29.

Having fully reviewed the record herein, the Court finds the parties have adequately presented the facts and legal arguments in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court decides this appeal without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court hereby AFFIRMS the bankruptcy court in all material respects.

## II. BACKGROUND[5]

The underlying dispute between Appellants and IIB relates to a state court action filed by IIB in 2010. While Frantz argues at length in his briefs of the wrongs done to him prior, and during, the state court proceedings, those facts are of marginal relevance to the bankruptcy case or this appeal—other than the obvious fact that they form the foundation for everything that has followed.

### A. State Court Proceedings

Broadly speaking, IIB provided loans to Appellants and their business entities over

---

[5] Appellee's brief contains the most concise, yet also comprehensive, recitation of the facts of this case. Information from the state court proceedings, Appellants' briefs, and the bankruptcy record itself are also included in this summary.

the course of many years. Following the 2008 financial crisis, Appellants defaulted on certain loans and IIB filed suit. In that lawsuit, Appellants admitted the material allegations against them, but asserted affirmative defense and counterclaims against IIB. More detailed facts concerning the state court action are set forth in *Idaho Indep. Bank v. Frantz,* 399 P.3d 836, 837 (Idaho 2017).

In October 2011—while the state court action was in its preliminary stages—Appellants filed a Chapter 11 bankruptcy petition. Accordingly, the state court action was stayed. On April 23, 2013, Appellants converted their bankruptcy case from a Chapter 11 reorganization to a Chapter 7 liquidation, and a bankruptcy trustee ("Trustee") was appointed to represent the bankruptcy estate.

Appellants initially sought to discharge the debt they owed to IIB, but on August 23, 2013, IIB filed an adversary complaint in the bankruptcy case wherein it argued that the Appellants' debt to IIB was non-dischargeable because it was fraudulently obtained. *Idaho Indep. Bank,* 399 P.3d at 837.

Less than two weeks before trial was to commence on IIB's fraud action, Appellants filed a voluntary waiver of discharge, which was approved by the bankruptcy court. As a result, the Appellants' debt to IIB became non-dischargeable and the fraud action was rendered moot. In dismissing the fraud action, the bankruptcy court awarded $49,477.46 in sanctions against Frantz and his attorney for misusing "litigation tactics to cause economic injury to an opponent and its counsel in the form of increased litigation costs." *Id.* at 837–38.

In light of the Appellants' voluntary waiver of discharge, the bankruptcy stay in the

state court action was no longer applicable. Accordingly, the state court action resumed, and on September 21, 2015, IIB filed a motion for summary judgment. In this motion, IIB argued that it was entitled to judgment because: (1) the Appellants unconditionally guaranteed the debt to IIB by signing several commercial guaranties; (2) there was no merit to the Appellants' affirmative defenses; and (3) the Counterclaim was owned by the bankruptcy Trustee. On January 8, 2016, the district court granted IIB's motion, and issued judgment in the amount of $9,193,546.50. Appellants appealed, and on July 17, 2017, the Idaho Supreme Court affirmed the judgment and awarded costs and attorney's fees on appeal to IIB. *Id.* at 844. The bankruptcy case proceeded throughout the Appellants' appeal of the state court action.

## B. Bankruptcy Proceedings

The appeals at hand here relate to primarily four orders—as well as related rulings, and/or determinations—issued by Chief Bankruptcy Judge Terry L. Myers, who presided over Appellants underlying bankruptcy case—Case No. 2:11-Bk-21337 ("Bk. Case"). To understand the Court's decision, it is helpful to review the underlying bankruptcy proceedings in some detail.

### 1. Overview

On November 18, 2016, the bankruptcy court issued an order under 11 U.S.C. § 363(m) authorizing the sale of some of Appellants' personal property, which included certain business interests. Bk. Case, Dkt. 668. Over a year later, on December 29, 2017, Appellants filed a motion to unwind that particular sale ("Motion to Unwind"). Bk. Case, Dkt. 805. Judge Myers denied the motion as untimely ("Personal Property Sale Order").

Bk. Case, Dkt. 880, 881. Appellants appeal this order.

On February 5, 2018, the bankruptcy court issued a second § 363(m) order approving the sale of some of Appellants real property ("Real Property Sale Order"). Bk. Case, Dkt. 852. Appellants challenged this order by filing a motion for a new trial ("Motion for New Trial"). Bk. Case, Dkt. 868. Judge Myers denied this motion. Bk. Case, Dkt. 876. Appellants appeal this order.

On June 28, 2018, the bankruptcy court issued a third § 363(m) order approving the sale of the counterclaims from the underlying state court action to IIB ("Counterclaims Sale Order"). (Bk. Case, Dkt. 956), as well as an order approving the Trustee's motion for interim distribution ("Interim Distribution Order"). (Bk. Case, Dkt. 957). Appellants appealed both orders.

The Court will now provide a more detailed background relative to the individual appeals, i.e., the motions, hearings, orders, and actions taken by Appellants and the bankruptcy court.

### 2. *Personal Property Sale Order and Motion to Unwind*

On September 27, 2016, the Trustee filed a motion seeking court approval to sell some of Appellants' personal property—including their business interests—to Appellants' children. Bk. Case, Dkt. 630. IIB submitted a higher offer, and after several competing bids, Appellants' children withdrew their opposition to IIB's purchase of the Personal Property. Bk. Case, Dkt. 653.

On November 18, 2016, the bankruptcy court issued the Personal Property Sale Order, which included a finding that the sale was "negotiated and undertaken . . . at arm's

length without collusion or fraud, and in good faith within the meaning of Section 363(m) of the Bankruptcy Code." Bk. Case, Dkt. 668, at 8.

Throughout the bidding process and even after the order had been issued, Appellants did not object to the sale of these assets. However, on December 29, 2017—more than one year after the Order was issued—Appellants filed a Motion to Unwind Sale pursuant to Federal Rule of Civil Procedure 60(b). Bk. Case, Dkt. 805. In their motion, Appellants argued that the sale created adverse tax consequences for the Estate—namely a net loss.

On January 12, 2018, the bankruptcy court entered an order setting a deadline of January 22, 2018, for objections and responses related to Appellants' Motion to Unwind. Bk. Case, Dkt. 816. The bankruptcy court also set a hearing date for January 30, 2018. *Id.*

On January 22, 2018, IIB filed an objection to Appellants' Motion arguing that, in addition to being time-barred, the Motion to Unwind lacked any legal or factual basis. Bk. Case, Dkt. 829. Later that same day, Frantz filed an amended motion wherein he raised new arguments related to the alleged tax consequences of the Personal Property Sale Order and requested that the bankruptcy court authorize a $30,000 tax-related distribution from the Estate. Bk. Case, Dkt. 831.

On January 29, 2018—the day before the hearing and seven days after the deadline established by the bankruptcy court—Appellants responded to IIB's objection. Bk. Case, Dkt. 839. Appellants argued their Motion to Unwind was not time-barred by the one-year limitation because it was filed within one year of the Trustee executing transfer documents for some of the personal property. *Id.*

On January 29, 2018, two of Appellants' children who had obtained a transfer of

some of the personal property at IIB's direction, filed a response to Appellants' Motion to Unwind essentially objecting to the motion. Bk. Case, Dkt. 841. In essence, they explained that they had "invested substantial amounts of money, time, and effort into these properties" and that "[w]ith these investments of time and resources, and since so much time has passed, it would now be impossible for the Court to simply unwind the transactions and put the parties back where they were." Bk. Case, Dkt. 841.

On January 30, 2018—based in part, it appears, on the numerous fillings related to this issue—the bankruptcy court extended the briefing deadline on Appellants' Motion to Unwind to February 7 and likewise extended the hearing date to February 12, 2018. Bk. Case, Dkt. 843. On February 2, 2018, Appellants' requested another continuance, which the bankruptcy court reluctantly granted by extending the briefing deadline to February 22, 2018, and the hearing date to March 6, 2018. Bk. Case, Dkt. 849.

On February 20, 2018, Appellants sought yet another extension. Bk. Case, Dkt. 858. The bankruptcy court held that:

> The Request is not well taken. The Court has been quite flexible and lenient with the Debtors, who represent themselves. But there must be, and are limits. The underlying motions, Doc. Nos. 805 and 808, were filed on December 29, 2017, and January 8, 2018. They and their attachments are voluminous. Objections thereto are pointed. Debtors have filed responses. The Court's ruling at the January 30 hearing was intentionally balanced and measured. The parties have the opportunity to file further legal briefs if they desire, notwithstanding their prior filings.
>
> While the March 6, hearing will **not** be moved or reset, the deadlines for briefs will be extended (for all parties) to March 2, 2018.
>
> No evidentiary hearings will be set at this time, and the question of any evidentiary hearing will be considered only after the Court has heard arguments on March 6 and independently determines an evidentiary hearing is necessary.

Bk. Case, Dkt. 859, at 2–3.

Thereafter, Appellants filed two additional briefs in support of their Motion to Unwind. On March 6, 2018, the bankruptcy court finally held a hearing on Appellants' Motion to Unwind. Two days later, on March 8, 2018, the bankruptcy court entered a Memorandum of Decision and a corresponding Order denying Appellants' Motion, finding it was time-barred under Rule 60(b). Bk. Case, Dkt. 880.

Appellants appealed this order. However, they did not obtain a stay of the enforcement of the Personal Property Sale Order, nor did they obtain a stay of the order denying their Motion to Unwind.

### 3. Real Property Sale Order and Motion for New Trial

On June 5, 2017, the Trustee filed a motion to sell approximately 54 acres and related interests and personal property to IIB. Bk. Case, Dkt. 714. At the same time, the Trustee filed a notice of hearing, which set the hearing date for June 27, 2017. *Id.*

On June 26, 2017—one day before the hearing—Appellants filed a 55-page objection, a 31-page declaration, and 39-pages of exhibits. Bk. Case, Dkts. 725, 726.

The bankruptcy court held an evidentiary hearing on June 27, 2017, as scheduled, and Frantz presented legal argument, evidence, and cross examined the witnesses called by the Trustee. *Id.*

On July 6, 2017, the bankruptcy court denied the Trustee's motion without prejudice finding the Trustee did not demonstrate that he had advertised or solicited the 54 Acres in a method to realize optimal value in the sale. Bk. Case, Dkt. 734.

After taking the necessarily steps identified by the bankruptcy court, the Trustee

proceeded with another public sale of the 54 Acres. IIB was the highest bidder and on November 10, 2017, the Trustee filed the motion regarding the sale of real property ("Real Property Sale Motion") and a notice of hearing for December 5, 2018. Bk. Case, Dkts. 773, 774, 775.

On November 29, 2017, Appellants filed an objection to the sale. Bk. Case, Dkt. 787. Frantz argued that the 54 Acres should have been listed for sale on the MLS to obtain optimal value, attaching declarations from certain real estate agents in support. *Id.*

On December 4, 2017—one day before the hearing—Frantz filed another objection to the sale wherein he raised a new argument related to purported tax consequences of the sale. Dkt. 794. In short, Frantz claimed that the sale would have severe tax consequences for the estate.

At the outset of the hearing, Frantz requested a continuance. Judge Myers granted a continuance despite objections from the Trustee and IIB. Bk. Case, Dkt. 796. In granting the continuance, however, Judge Myers emphasized that parties needed to adhere to strict disclosure and briefing deadlines. *Id.* Judge Myers set the evidentiary hearing for January 16 and 17, 2018, and required that the parties disclose all witness and evidence by December 30, 2017. Judge Myers also specifically told Frantz that he had two weeks (or until December 19, 2017) to deliver the alleged tax-related documentation to the Trustee. *Id.*

On December 29, 2017, the Trustee, IIB, and Appellants submitted witness and exhibit lists as required.

The evidentiary hearing commenced on January 16, 2018. At outset of the hearing,

Frantz requested permission to have a non-lawyer assist him with the presentation of exhibits and the organization of materials at trial. The bankruptcy court granted the request. Frantz proceeded to present evidence, called expert witnesses to testify about the value and method of sale of the 54 Acres, and extensively cross-examined the witnesses presented by the Trustee and IIB. Appellants also raised the tax issues during the hearing. At the conclusion of the evidentiary hearing, the bankruptcy court informed the parties it was taking the motion under advisement and would hear closing arguments on January 24, 2018.

In the interim, Appellants filed an estate payment motion on January 22, 2018, requesting court approval for a $30,000 distribution from the Estate, which was related to their tax-related arguments. Bk. Case, Dkt. 831. As part of that motion, Appellants attached exhibits from the January evidentiary hearing, despite the fact that the bankruptcy court had ruled those particular exhibits were not admissible due to evidentiary deficiencies.

In an oral ruling on January 30, 2018, the bankruptcy court ultimately overruled Appellants' objections and granted the Trustee's Real Property Sale Motion. Bk. Case, Dkt. 843. In its ruling, the bankruptcy court specifically noted that Appellants evidence was not timely disclosed and that it did not support their proposition that the sale would create a significant tax liability for the estate. *Id.*

On February 2, 2018, the bankruptcy court entered an order denying various motions Appellants had filed after the evidentiary hearing. Bk. Case, Dkt. 846. The bankruptcy court also elaborated on its prior oral ruling and found that "[t]he evidentiary record regarding the Sale Motion was closed on January 17 . . . . Debtors' attempts to raise

additional issues or to provide additional evidence after the hearing was over are improper. Such actions are not countenanced by applicable Rules, and they are ineffective." *Id.*

On February 5, 2018, in accordance with its previous oral ruling, the bankruptcy court entered the Real Property Sale Order. Bk. Case, Dkt. 852.

On March 2, 2018, Appellants filed their Motion for New Trial wherein they restated their argument that the sale of the 54 Acres would cause a negative tax liability to the Estate. Bk. Case, Dkt. 868. Attached to the Motion for New Trial were documents that had not previously been disclosed—specifically there were certain accounting documents commissioned by Frantz from a CPA firm wherein the author(s) opine on the negative tax affects the sale would have on the estate.

On March 6, 2018, a hearing was held to address Appellants' Motion for New Trial. Bk. Case, Dkt. 873. Judge Myers noted at the outset that these particular attachments were submitted extremely late and in violation of its clear instruction that Appellants were to disclose all tax-related documents by December 19, 2017. The bankruptcy court ultimately denied the Motion for New Trial as the arguments did not constitute "new evidence" under Federal Rule of Civil Procedure 59(e).

Subsequently, Appellants appealed the denial of their Motion for New Trial claiming that the bankruptcy court was required to consider the untimely tax-related evidence. Bk. Case, Dkt. 885. However, Appellants did not obtain a stay regarding the

enforcement of the Real Property Sale Order. [6]

### 4. *Interim Distribution Order*

On May 31, 2018, the Trustee filed a motion for an order approving an interim distribution. Bk. Case, Dkt. 922. In this motion, the Trustee requested that the bankruptcy court allow a partial distribution of proceeds of $400,000—held by the Estate—to be paid to six different creditors of the Estate and $57,585.55 for Trustee compensation.

On June 18, 2018, Appellants filed an objection to this motion, contending that the funds should not be distributed until the tax-related arguments (i.e. the Motion for New Trial that was already on appeal) were resolved. Bk. Case, Dkt. 942. The bankruptcy court heard the matter on June 26, 2018. Frantz did not attend the hearing, however, the Court nonetheless considered his objection. Bk. Case, Dkt. 957, at 1.

Ultimately, Judge Myers rejected Frantz's arguments and entered the corresponding Interim Distribution Order on June 28, 2018, which authorized the Trustee to make the distribution payments as soon as practicable. *Id.* After the distributions were made, Appellants appealed the Interim Distribution Order, which is now pending before this Court; however, as with the prior orders, Appellants did not obtain a stay related to the Interim Distribution Order.

---

[6] Consequently, on April 26, 2018, IIB provided the consideration and the Trustee executed a Warranty Deed and consummated the transfer of the 54 Acres to IIB in accordance with the terms of the Real Property Sale Order. IIB transferred its interest to an affiliate company who then sold the property to a third-party buyer. The Warranty Deeds of these sales are all recorded in Kootenai County.

*5. Sale of Bankruptcy Counterclaims*

After IIB obtained a judgment in the state court action—which was affirmed by the Idaho Supreme Court—it sought to recover upon the judgment. To that end, IIB offered to purchase the counterclaims filed by Appellants in the state court action, from the Estate, so that it could dismiss that action. Bk. Case, Dkt. 921. The Trustee accepted IIB's offer and filed a notice of sale and opportunity to object, detailing the proposed sale to IIB. *Id.*

In the notice, the Trustee explained that the counterclaims in the state court action had no real value. *Id.* This conclusion was based off the state district court's summary judgment decision wherein the court found that Appellants affirmative defenses were barred as a matter of law and that the counterclaims were identical to the barred affirmative defense. *Id.* Nevertheless, the Trustee reasoned that the counterclaims held some unique value to IIB because, by purchasing the counterclaims, IIB would be able to dismiss the state court action thereby saving attorney's fees and court costs that it would otherwise spend to defend against Appellants' frivolous arguments. *Id.* Frantz objected to Trustee's position, arguing that the sale would ultimately "violate[] basic human rights and access to court procedures, rules and regulation." Bk. Case, Dkt. 942.

At the previously mentioned June 26, 2018, hearing—at which Frantz did not appear—the bankruptcy court considered Frantz's objections to the proposed sale. Ultimately, the bankruptcy court approved the sale of the counterclaims to IIB and issued the Counterclaims Sale Order. The bankruptcy court found that "the sale of the Property to IIB was negotiated and undertaken by the Chapter 7 Trustee and IIB at arm's length, without collusion or fraud, and in good faith within the meaning of §363(m) of the

Bankruptcy Code and, therefore, IIB is entitled to all of the protections afforded by §363(m)." Bk. Case, Dkt. 956. Upon entry of the Counterclaims Sale Order, IIB filed a notice of dismissal of counterclaims with prejudice in the state court action.

Frantz appealed the Counterclaims Sale Order on July 2, 2018; however, he did not seek nor obtain a stay of that order.

On July 20, 2018, the state court entered an order dismissing the counterclaims with prejudice.

### III. LEGAL STANDARD

District courts review bankruptcy court decisions in the same manner as would the Ninth Circuit. *See George v. City of Morro Bay (In re George)*, 177 F.3d 885, 887 (9th Cir. 1999). Thus, the Court reviews the bankruptcy court's conclusions of law de novo and the bankruptcy court's factual findings for clear error. *Id.* Additionally, the Court reviews each of the challenged orders in this case under an abuse of discretion standard. *See In re Clark*, 266 B.R. 163, 168 (B.A.P. 9th Cir. 2001) ("Rulings on motions to sell property of the estate other than in the ordinary course of business pursuant to section 363 are reviewed for abuse of discretion."); *Ta Chong Bank Ltd. v. Hitachi High Techs. Am., Inc.*, 610 F.3d 1063, 1066 (9th Cir. 2010) ("The denial of a motion under Rule 59(e) to alter or amend the judgment is reviewed for abuse of discretion."); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (whether an evidentiary hearing is held is reviewed for an abuse of discretion); *In re Funderburgh*, 526 B.R. 361, 370 (B.A.P. 10th Cir. 2015) ("If Debtors have standing to challenge the bankruptcy court's Order Authorizing Distribution, we review such order for an abuse of discretion.").

Under an abuse of discretion standard, an appellate court will not reverse a bankruptcy court "unless it has a definite and firm conviction that the court below committed clear error of judgment in the conclusion it reached upon weighing the relevant factors." *In re Stine,* 254 B.R. 244, 248 (B.A.P. 9th Cir. 2000).

The abuse of discretion standard requires the reviewing court to first "determine *de novo* whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson,* 585 F.3d 1247, 1261–62, n.21 (9th Cir. 2009) (en banc).[7] If the bankruptcy court identified the correct rule, the reviewing court is then to determine under the clearly erroneous standard whether its factual findings and its application of the facts to the law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (internal quotations omitted).

## IV. DISCUSSION

Before addressing Frantz's various appeals, the Court must discuss some procedural

---

[7] Sometimes it is difficult to understand these standards on appeal. As the Ninth Circuit described:

> The Supreme Court explained the meaning of the abuse of discretion standard in *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S. Ct. 2447, 110 L.Ed.2d 359 (1990), where the court stated, "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id.* at 405, 110 S. Ct. 2447. In other words, the Court defined abuse of discretion review of factual findings in terms of "clearly erroneous" review, holding that "[w]hen an appellate court reviews a district court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable: A court of appeals would be justified in concluding that a district court had abused its discretion in making a factual finding only if the finding were clearly erroneous." *Id.* at 400–01, 110 S. Ct. 2447.

*Hinkson*, 585 F.3d at 1259.

matters. The Court does this at the outset as some of the principles affect multiple appeals.

## A. Procedural Matters

### 1. Jurisdiction

The bankruptcy court had jurisdiction over these matters pursuant to 28 U.S.C. § 157(b) and 28 U.S.C. § 1334. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a) with respect to any final orders of the bankruptcy court. An order of a bankruptcy court is final and appealable if it "resolves and seriously affects substantive rights and . . . finally determines the discrete issue to which it is addressed." *In re AF! Holding, Inc.,* 530 F.3d 832, 836 (9th Cir. 2008). Each of the orders, with the exception of the Interim Distribution Order, clearly meet this requirement and are final under 28 U.S.C. § 158(a).

The Court's jurisdiction over the appeal of the Interim Distribution Order presents a more difficult question as it appears to be an open question as to whether these types of orders are actually "final." The Ninth Circuit has held that orders awarding interim compensation of professionals employed by the bankruptcy estate, under 11 U.S.C. § 331, are not final and appealable. *See, e.g., In re Strand,* 375 F.3d 854, 858 (9th Cir. 2004). Whether such a holding would apply to the facts of this case is unclear. Courts outside the Ninth Circuit, however, have noted there is a split in authority as to whether distribution orders are final, appealable orders. *See In re Bird,* 565 B.R. 382, 392–93 (Bankr. S.D. Tex. 2017).

In this case, the bankruptcy court specifically noted that the Interim Distribution Order was final under 28 U.S.C. § 158(a). Bk. Case, Dkt. 957, at 1. Furthermore, under the

broad provisions of 28 U.S.C. § 158(a)(3), the Court finds it appropriate to hear the appeal. *See, e.g., Bullard v. Blue Hills Bank,* 135 S. Ct. 1686, 1695–96 (2015) (holding that "a district court or BAP can . . . grant leave to hear such an appeal"). Accordingly, while not addressing the specific question of the appealability of an interim distribution order, the Court nonetheless finds it has jurisdiction over that appeal as well.

On a somewhat unrelated note, as already mentioned, Frantz spends a significant amount of time in briefing arguing the underlying facts of the state court actions that have already taken place. These arguments are of no consequence to the Court—except as background—as Frantz had an opportunity to pursue those matters all the way to the Idaho Supreme Court. Although Frantz is not "appealing" the state court issues per se, he clearly disagrees with the outcome. Thus, the Court wants to make clear that under the Rooker-Feldman Doctrine,[8] it lacks jurisdiction to hear what amounts to an appeal of a state court decision and will not opine on anything related to Appellants' state court proceedings. *See In re Jensen Edwards,* 535 B.R. 336, 342 (Bankr. D. Idaho 2015) ("the *Rooker-Feldman* Doctrine prohibits a federal court from exercising jurisdiction over a lawsuit that is a *de facto* appeal of a state court judgment.") (quoting *Carmona v. Carmona,* 603 F.3d 1041, 1050-51 (9th Cir. 2010)).

---

[8] The Rooker-Feldman doctrine comes from two United States Supreme Court cases—*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)—where the Court explained that lower federal courts (i.e. Courts other than the Supreme Court) cannot sit in direct review of state court decisions unless Congress has specifically authorized such relief.

### 2. Requested Relief

Additionally, throughout his briefing, Frantz states that the Court should grant him "[a] presumption of innocence and due process" (Dkt. 21, at 17, 18, 20, 37, 38, 39), or a "presumption of innocence and trial" (Dkt. 21, at 16, 18, 19, 20, 31, 37, 38). Without going into a lengthy discussion regarding any of these legal phrases and principles, the Court simply notes that Frantz requests are somewhat misplaced.

The "presumption of innocence" is most generally associated with criminal matters, and while in some esoteric sense Frantz may be entitled to a "presumption of innocence" as it relates to his cases, such a request is not applicable in this context.

Regarding due process, the Court has reviewed the bankruptcy court record and—consistent with its Decision today—finds that Judge Myers afforded Appellants all appropriate due process. This Court (i.e. the reviewing Court) will afford Appellants the same due process procedures and protections.

Finally, trial in bankruptcy cases is a complicated question and not an appropriate remedy for the Court to offer today. *See* Fed. R. Bank. P. 9015. Were the Court to grant any relief—which it cannot and/or will not as explained below—it would simply remand the matters to the bankruptcy court for further proceedings.

Generally speaking, the Court will simply construe each of these requests as Appellants desire to receive a "fair shake" (Dkt. 21, at 39) from the Court system.

### 3. Waiver / Mootness

It is well-settled that arguments not raised in an opening brief are waived on appeal. *Hale v. US. Trustee,* 509 F.3d 1139, 1145 (9th Cir. 2007); *Smith v. Marsh,* 194 FJd 1045,

1052 (9th Cir. 1999). Accordingly, the issues on appeal here are limited to those actually articulated in Appellants' opening brief. This presents a bit of a problem, however, as Appellants "Issues on Appeal" differ slightly than the orders they actually appealed. *See* Dkts.1, 1-2, 10, 21.

As an example, Appellants appealed Bankruptcy Order Dkt. 883. Dkt. 1, at 1. Docket 883 was an order denying one of Appellants' prior motions in the bankruptcy case (Bk. Case, Dkt. 808). Dkt. 1-2, at 2. Appellants never address this document in their moving papers before this Court on appeal. The sole references to this order are related to Frantz's contention that the bankruptcy court failed to accommodate him during the proceedings that gave rise to these orders. In other words, Frantz does not challenge (i.e. appeal) the order based on the outcome necessarily, but how he got to that order—namely without legal help. In sum, Appellants have waived any challenge to this particular order on appeal.

Additionally, as a general rule, arguments raised for the first time on appeal are not considered. *Woods v. Saturn Distribution Corp.,* 78 F.3d 424, 430 (9th Cir. 1996). IIB argues that because Appellants did not challenge the bankruptcy courts' Counterclaims Sale Order (Bk. Case, Dkt. 956) they cannot now raise this issue on appeal. This is incorrect. Appellants filed an objection to the proposed sale. Bk. Case, Dkt. 942. While Appellants may not have challenged the order *after* it was entered, they clearly disagreed with it. The Court will consider it ripe for review.

That said, there is also the issue of mootness that bears upon the Court's decision today.

Appellants asked the bankruptcy court to "unwind" or reconsider: (1) the sale of their personal property under a Rule 60(b) motion; (2) the sale of the 54 Acres under a Rule 59(e) motion; and (3) the sale of the counterclaims under the assertion that the Estate has no right or interest to sell that property. Bk. Case, Dkts. 866, 868, 964, 971. Importantly, each of those three sale orders contain an express finding of good faith on the part of the purchaser, IIB. Bk. Case, Dkts. 668, 852, 956. Appellants did not appeal the bankruptcy court's finding of good faith as to any of those three orders, simply the orders themselves. Dkts. 885, 896, 964, 971. Even more problematic, Appellants did not obtain a stay of any of the three sale orders pursuant to 11 U.S.C. 363(m).[9]

As set forth by the Ninth Circuit in *In re Ewell,* 958 F.2d 276 (9th Cir.1992), when a trustee moves for the authorization to sell property pursuant to 11 U.S.C. § 363(b)(l):

> The property rights of good faith purchasers participating in such sales are protected by section 363(m), which provides that:
>
> the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, *unless such authorization and such sale or lease were stayed pending appeal.*

*Id.* at 279 (emphasis added). Thus, "as section 363(m) makes clear, only a stay *pending appeal* will avoid mootness." *Id.* at 280 (emphasis in original). The Ninth Circuit went on

---

[9] Appellee's incorrectly state that Appellants should have requested a stay pursuant to Bankruptcy Rule 8005. Rule 8005, however, was modified in 2014 to remove the provision discussing a stay. That said, the principle still stands. Section 363(m) clearly requires a stay pending appeal if the party appealing the order hopes to "reverse[] or modify[]" the order.

to explain the policy behind this bright line rule:

> Since *Combined Metals* was decided, we consistently have affirmed the importance of finality in bankruptcy sales. *See In re Onouli-Kona Land Co.,* 846 F .2d 1170, 1172 (9th Cir. 1988) ("Finality in bankruptcy has become the dominant rationale for our decisions; the trend is towards an absolute rule that requires appellants to obtain a stay before appealing a sale of assets."). We have applied the mootness rule whether or not the purchaser is a party to the appeal or the purchaser has taken irreversible steps following the sale. *Id.*

*Id. See also In re Gardens Regional Hospital and Medical Center, Inc.,* 2018 WL1229989, at *3 (C.D. Cal. Jan. 19, 2018), ("[w]hen the protection of this statute applies [§363 (m)], there is no way to continue to challenge the approved sale, and the matter is therefore statutorily moot."); *Gens v. Kaelin,* 2017 WL 4800939, at *2 (N.D. Cal. Oct. 23, 2017) (holding when a sale of assets is made to a good faith purchaser, it may not be modified or set aside unless the sale was stayed pending appeal).

In this case, the record is clear; Frantz did not obtain a stay pending the appeal of any of the three sale orders he now appeals. In each of those orders, Judge Myers explicitly stated that the purchases made by IIB were made in good faith and were subject to the protections of § 363(m). Bk. Case, Dkts. 668, 852, 956. Accordingly, each of the appeals regarding the three sale orders is legally moot.

Interestingly, these matters—as well as the Interim Distribution Order—are equitably moot as well. The doctrine of equitable mootness is a "judge-made abstention doctrine unrelated to the constitutional prohibition against hearing moot appeals." *In re Mortgs. Ltd.,* 771 F.3d 1211, 1241 (9th Cir. 2014) (internal quotations omitted). This doctrine provides that even where effective relief is theoretically possible, and the appeal is therefore not constitutionally moot, courts may "dismiss appeals of bankruptcy matters

where there has been a 'comprehensive change of circumstances . . . so as to render it inequitable for [the] court to consider the merits of the appeal.'" *Id.* (quoting *In re Thorpe Insulation Co.,* 677 F.3d 869, 880 (9th Cir. 2012)). Stated another way, "[e]quitable mootness concerns whether changes to the status quo following the order being appealed make it impractical or inequitable to 'unscramble the eggs.'" *In re Castaic Partners II LLC,* 823 F.3d 966, 968 (9th Cir. 2016).

In the Ninth Circuit, the test for equitable mootness is as follows:

> We will look first at whether a stay was sought, for absent that a party has not fully pursued its rights. If a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred. Next, we will look to the effect a remedy may have on third parties not before the court. Finally, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court.

*In re Thorpe,* 677 F.3d at 881. Failure *to seek* a stay pending appeal may be grounds, in and of itself, to dismiss the appeal as equitably moot. *See In re Mortgs. Ltd.,* 771 F.3d at 1216–17.

As already noted, Frantz did not seek, let alone obtain, a stay of any of the orders in this case pending appeal. In the absence of any stays, those orders have been consummated, distributions have been made, and parties have moved on. This constitutes a "comprehensive change of circumstances" and any remedy by this Court would be an "impractical or inequitable [attempt] to unscramble the eggs," *In re Castaic Partners II LLC,* 823 F.3d at 968. In sum, the appeal of these orders is equitably moot.

Legal and equitably mootness aside, the Court does not wish this litigation to

continue indefinitely and will thus address *additional* substantive reasons Appellants'

various arguments fail. These reasons are set forth below.

### 4. Pro Se status

Finally, Frantz explains in detail that he has certain learning disabilities, including

dyslexia. While this plays into his "appeal" that Judge Myers did not grant him an ADA

accommodation (which will be addressed more fully below), Frantz appears to bring this

fact up as justification for his procedural errors during the bankruptcy proceedings—lately

filed briefs, motions that do not comport with the rules, etc.—and in support for his

proposition that he should have been provided "standby counsel / assistance" during the

proceedings.[10]

The Court is sympathetic to Frantz's plight. So too, however, was Judge Myers. As

will be explained below, Judge Myers gave Frantz numerous opportunities,

accommodations, and allowances to afford him a fair opportunity and access to justice.

Federal courts make "reasonable allowances for *pro se* litigants and construe their

pleadings and papers liberally." *In re Saito Bros. Inc.,* 560 B.R. 540, 545 (Bankr. D. Idaho

2016); *In re Jacksen,* 105 B.R. 542, 543 (B.A.P. 9th Cir. 1989) (citing *McCabe v. Arave,*

827 F.2d 634, 640, n.6 (9th Cir. 1987)). That said, "it is still the *pro se* litigant's burden to

establish a proper legal basis for any relief sought or defense raised, and to follow the

---

[10] The Court would note that it appears Appellants were represented by counsel in their state court proceedings from the time the complaint was filed through the completion of briefing before the Idaho Supreme Court. Additionally, Appellants were represented by counsel during much of their bankruptcy proceedings.

requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules." *In re Saito Bros. Inc.,* 560 B.R. at 545 (citing *In re Arnold,* 252 B.R. 778, 781, n.2 (B.A.P. 9th Cir. 2000)).

As will be explained in greater detail below, Frantz has been able to successfully represent himself in this case. He has appeared and argued at hearings, prevailed on certain motions, and written substantive briefs.[11] In short, while the Court is sympathetic to Frantz's circumstances, he has been given reasonable accommodations and is still bound by the applicable guidelines and rules.

The Court turns next to its analysis of the individual issues on appeal.

## B. Appeals

### 1. *Motion to Unwind*

Along with legal and equitably mootness, Judge Myers' decision on Appellants' Motion to Unwind must be upheld because the motion was statutorily barred.

Federal Rule of Civil Procedure 60 clearly sets forth that "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) *no more than a year after the entry of the judgment or order* or the date of the proceeding." Fed. R. Civ. P. 60(c)(1) (emphasis added). In this case, Appellants brought their Motion to Unwind under reasons (2) and (3). Bk. Case, Dkt. 805, at 3. Thus, Appellants needed to file the motion within one year of the judgment at issue. *See Lyon v. Agusta S.P.A.,* 252 F.3d 1078,

---

[11] For example, Frantz's briefs in this case are approximately 60 pages in length, are well written, have limited typographical errors, and address substantive legal arguments.

1088 (9th Cir. 2001) (holding that motions under Rule 60(b)(2) and (b)(3) "must be brought within one year of the judgment which is being attacked").

The judgment at issue here was entered on November 18, 2016. Bk. Case, Dkt. 668. Accordingly, Appellants had until November 18, 2017, to file a Rule 60(b) Motion. Appellants did not file their motion until December 29, 2017—approximately six weeks after the deadline. Bk. Case, Dkt. 805. In addition, Judge Myers correctly determined that no exception to Rule 60's time bar applied in this case.

Upon review, the Court determines that Judge Myers did not abuse his discretion in denying Appellants' Motion to Unwind. The decision is AFFIRMED.

2. *Motion for New Trial*

Along with legal and equitable mootness, Judge Myers did not abuse his discretion in denying Appellants' Motion for New Trial because the Court was not required to consider the untimely tax-related evidence.

Frantz submitted these tax documents as part of his Motion for New Trial on March 2, 2018. This was *after* the extended deadline Frantz had received to disclose this type of evidence to the opposing parties, *after* the two-day hearing wherein Frantz presented evidence, examination, cross-examination, and legal argument regarding adverse tax consequences, *after* Frantz informed the parties and the bankruptcy court that he had submitted everything he intended to submit in support of his objection to the Real Property Sale Motion, *after* the bankruptcy court held that the evidentiary record for the Real Property Sale Motion was closed, and *after* the court had ruled against Frantz's tax related objections.

As the bankruptcy court correctly explained, under Federal Rule of Civil Procedure 59(a)(l), the Court may grant a new trial on all or some of the issues after a non-jury trial for any reason for which a rehearing has been granted in suit, in equity, in federal court and under (a)(2) may open a judgment, take additional testimony, amend its findings, or make new ones in a new judgment. Bk. Case, Dkt. 932, at 13. *See also In re Wallace,* 2013 WL 782721 (Bankr. D. Idaho 2013).

As the Ninth Circuit has outlined:

> Under Federal Rule of Civil Procedure 59(e), a party may move to have the court amend its judgment within twenty-eight days after entry of the judgment. Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion. But amending a judgment after its entry remains an extraordinary remedy which should be used sparingly. In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (internal citations and quotations omitted).

Importantly, Rule 59(e) should not be abused to "raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Allstate Ins. Co.,* 634 F.3d at 1112. If the evidence could have been discovered and presented through the exercise of reasonable diligence, then it does not constitute "new evidence" under Rule 59(e) and cannot be utilized to obtain a new trial. *See Prudence Corp. v. Shred-it-America,* 2008 WL 11342748, at *l (C.D. Cal. 2008) (holding that "a second

bite at the apple" is not appropriate under Rule 59(e)); *In re Greco*, 113 B.R. 658, 664 (D. Haw. 1990), *aff'd and remanded sub nom. Greco v. Troy Corp.*, 952 F.2d 406 (9th Cir. 1991) ("[C]ourts in this circuit have also recognized that a motion for reconsideration is not permitted (a) to assert new legal theories that could just as well have been raised before the initial hearing; (b) to present new facts which could have been presented before the initial hearing; or (c) to rehash the same arguments made the first time or simply express an opinion that the court was wrong.").

The evidence Frantz presented in his Motion for New Trial was not new. It may have been "new" in the sense that Frantz had only recently received it, but it was related to information already before the Court. As Frantz readily admits: "I did timely file letters and declarations from the CPA stating that his preliminary analysis indicated there were significant taxes owed to the IRS." Dkt. 21, at 28–29. In other words, this "new" information was supplemental to things Frantz had already filed. That said, supplemental information is not an appropriate basis for a Rule 59 Motion. Judge Myers gave Frantz numerous extensions of time in which to file whatever he deemed appropriate.

After those continuances, the bankruptcy court outlined firm deadlines setting forth when information needed to be turned over. This applied to Frantz's "adverse tax consequences" materials. Frantz failed to comply. At the hearing, Judge Myers considered all of Frantz's arguments and closed the record.

Presumably, had Frantz indicated a report was forthcoming, Judge Myers would have allowed supplemental briefing. On the contrary, however, Frantz represented he had submitted everything he intended to submit on the issue. Bk. Case, Dkt. 930, at 15. *Then,*

almost two months later, Frantz brought this information to the Court's attention. Such tactics are improper.

The Court will not delve too much into the substance of this matter, but notes that Judge Myers found that the information provided did not substantiate the claimed objection. In fact, two other CPA's testified during the hearing that the sale of the property *would not* have adverse tax consequences for the estate. In other words, Judge Myers found that Frantz's objections were unsubstantiated. It is unlikely this new information would have changed that. Regardless, the matter before the Court is whether Judge Myers abused his discretion. The answer is clearly no. Deadlines were set, representations were made, the matter was decided. Then Frantz brought forth information he could have brought previously with due diligence[12] claiming that a new trial was necessary. Judge Myers correctly determined that Frantz's filings did not meet the standards as outlined by Rule 59(e) and denied the Motion for New Trial. These factual determinations will not be disturbed on appeal. The decision is AFFIRMED.

### 3. Interim Distribution Order

The appeal of this order is flawed in many respects. Again, legal and equitable mootness aside, Appellants' purported reason for objecting to this order was the idea that no distributions should take place until their tax liability issues were resolved. As just

---

[12] In his current briefing before this Court on appeal, Frantz now argues that Judge Myers did not provide him with a reasonable accommodation under the ADA for his cognitive disability—dyslexia. Frantz argues that had Judge Myers given him more time to prepare, it would have altered the outcome. Again, taking aside the fact that Judge Myers ruled the "tax consequence" argument was meritless, Judge Myers did grant Frantz certain reasonable accommodations for his conditions. This will be addressed more fully in Section IV(B)(5).

outlined, though, the bankruptcy court had resolved those issues—just not to Appellants' satisfaction. That said, even if those issues were outstanding or unsettled at the time the Interim Distribution Order was filed, the bankruptcy court was still within its right to issue the order.

An interim distribution is authorized under 11 U.S.C. § 105. *See also In re Bird,* 565 B.R. 382, 400 (Bankr. S.D. Tex. 2017). In this case, the Court considered the motion, the relevant standards, Appellants' objections, held a hearing, and ruled that under 11 U.S.C. 363(m) the distribution was proper. There was no valid reason to stall the sale then—even with other issues "pending"—and there is no reason to reverse the sale now.

Additionally, it does not appear Appellants have standing to object to this order.

For a debtor to have standing to challenge an interim distribution order on appeal, it must be a surplus case. A surplus case exists when the assets of the estate exceed the claims against the estate. When this happens, the trustee is able to distribute the surplus funds to the debtor after paying all the estate's debts. *See, e.g., In re Funderburgh,* 526 B.R. at 374 (holding that the debtors, whose discharge was denied, had no standing to challenge an interim distribution order by the bankruptcy court because the *interim distribution* did not affect the debtors where there were no surplus funds of the estate to be paid to the debtors).

Standing to appeal an issue is present in bankruptcy cases "[i]f a court's order diminishes a person's property, increases his burdens, or impairs his rights, then such person is aggrieved" and has the ability to appeal the order. *Id.* But "[a] Chapter 7 debtor rarely meets this requirement with respect to asset distribution because the manner in which

a trustee disburses an estate's assets does not pecuniary affect him." *Id.* (internal citations omitted). In this case Appellants' do not have standing to challenge this order because there is no chance the money would have trickled down to them or provided them with any pecuniary benefit. Simply put, the matter was out of their hands and up to the Trustee.

For each of the reasons outlined above, Judge Myers' Interim Distribution Order is AFFIRMED.

### 4. Sale of Counterclaims

Along with statutory mootness, Frantz is precluded from appealing the bankruptcy court's order selling his state law counterclaims (the "10-6088" claims) because he did not raise the issue below. *See Woods v. Saturn Distribution Corp.,* 78 F.3d 424, 430 (9th Cir. 1996). He objected to the sale to be sure, but he did so based on the unsubstantiated argument that buying a complaint and then dismissing the action is "a violation of human rights." Bk. Case, Dkt. 942, at 7.

That aside, even were the Court to consider Frantz's new argument—that the Estate did not hold interest in the Counterclaims of 10-6088, and could, therefore, not sell them— the result is the same as this is a misunderstanding of the law.

Frantz claims that because he signed a waiver of discharge, he had the sole right to litigate his two pre-petition cases.[13] This is simply not the case.

---

[13] Frantz strongly emphasizes the fact that he had control over the "Roeller claim"—Frantz's other state court action—and that as a result, he should have had control over the 10-6088 claims. The parties dispute whether the Roeller claim was filed pre-petition or post-petition. It ultimately does not matter. The question

A waiver of discharge is governed by 11 U.S.C. § 727(a)(10), which provides that "the court shall grant the debtor a discharge, unless . . . the court approves a written waiver of discharge executed by the debtor after the order for relief in this chapter." Notably, § 727(a)(10) does not expressly reinvest the debtor with the right to the property of the estate. Said differently, the chapter 7 trustee remains the party to administer the assets of the estate even after a waiver of discharge. *See, e.g., In re Asbury,* 408 B.R. 817, 819 (Bankr. W.D. Mo. 2009) ("Section 727(a)(10) waives the right to any discharge at all, and the debtor's non-exempt assets may still be liquidated by the trustee but any unpaid debts survive.").

Upon the commencement of a bankruptcy case, pursuant to 11 U.S.C. § 541(a), a bankruptcy estate is created. The estate holds all the debtor's tangible and intangible interest. *See In re Tews,* 502 B.R. 566 (Bankr. D. Idaho 2013). The chapter 7 trustee appointed in the bankruptcy case is responsible for administering property of the estate, created upon the commencement of a case. *See* 11 U.S.C. § 704. Causes of action that are held by a debtor prior to filing bankruptcy are property of the bankruptcy estate upon commencement of a case and thus capable of being sold by a chapter 7 trustee. *See In re Lahijani,* 325 B.R. 282, 288 (B.A.P. 9th Cir. 2005); *In re Pac. Cargo Servs., LLC,* BAP No. OR-14-1036-KiKuJu, 2015 WL 728048, at *6 (B.A.P. 9th Cir. Feb. 19, 2015).

Appellants in this case filed their counterclaims against IIB on March 23, 2011, and

---

is not why there was disparate treatment between who controlled the two cases—even assuming there was—but whether the Estate had control over the 10-6088 case. The Court takes no position on the Roeller claim and/or who had control over that claim. The Court's sole task is determining who had control of the 10-6088 claim.

filed bankruptcy in October 2011; thus, there can be no question that the claims were existing at the time of the bankruptcy filing. *See Idaho Indep. Bank,* 399 P.3d at 837. It appears Appellants understood this. For example, in the bankruptcy schedules Appellants filled out, they identified as personal property an "[u]nliquidated claim against Idaho Independent Bank in litigation." Bk. Case, Dkt. 167, at 5.

Importantly, Appellants do not argue that the sale of the Counterclaims violated § 363. Instead, Frantz argues repeatedly that because he waived his discharge, he obtained the right to what was clearly property of the Estate. As set forth above, however, this analysis is a fundamental misunderstanding of bankruptcy law.

For all these reasons, the Court finds that Judge Myers did not err in approving the Counterclaims Sale Order. The order is AFFIRMED.

   *5.  ADA Accommodation / Standby Counsel*

Frantz's final appeal raises the following question: "in the proceedings which led up to the court order to deny the evidentiary hearings . . . did the court error [sic] by failing to provide Frantz reasonable Pro-Se ADA court assistance?" Dkt. 21, at 29–30. In short, Frantz claims that based on his dyslexia, Judge Myers should have appointed a "court attorney as an ADA accommodation to assist with procedure matters, court appearances and research/reading and interpretation." Dkt. 21, at 20.

By way of background, it appears that on January 9, 2018, Frantz filed a motion to seal medical records. Bk. Case, Dkt. 810. It this motion, Frantz requests "ADA accommodation as recommended on those medical records." *Id.* at 1. Because those records are sealed the Court will not discuss them in great detail here, but suffice it to say, Frantz

provided records and opinions from two physicians stating that he had an ADA learning disability and suggesting recommendations for accommodation.[14] Bk. Case, Dkt. 812; Dkt. 29, at 11–12. Judge Myers addressed this accommodation issue during the hearing on January 16, 2018 and granted the majority of Frantz's requests.

A few months later, on the morning of March 6, 2018, Frantz submitted a motion for stand-by counsel. Bk. Case, Dkt. 872. Judge Myers effectively denied that motion. Thus, it *appears* that Frantz is only appealing that determination.

First, the Court must address what this claim is not about. It is not a request for full-fledge representation. Frantz admits the same. Dkt. 29, at 11. Relatedly, this appeal is very specific. Frantz is only challenging Judge Myers' denial of assistance at the March 6, 2018, hearing. This is important because Frantz's motion for an ADA accommodation was in preparation for the January 16, 2018, hearing. His request at the March 6, 2018, hearing was for stand-by counsel under 28 U.S.C. § 1915(d). There is a distinction between the two requests. While Frantz's issue on appeal is couched as "No Pro-Se ADA Accommodation," he is really challenging the denial of his motion for stand-by counsel on March 6, 2018, under § 1915. To be sure, the reason for which Frantz requested stand-by counsel in the first place was due, in part, to his "ADA circumstances," however, the motion was broader than that. *See* Bk. Case, Dkt. 872. Regardless, this Court must review the bankruptcy court's action under § 1915—the statue Frantz's request relied upon—not the ADA, the

---

[14] These recommendations include things such as "allowing for additional processing time," "early access to written documents . . . to allow sufficient time to review," and "use of visual aids to assist in comprehension." Dkt. 29, at 12.

Rehabilitative Act, DOJ regulations, or any other framework. Finally, while Frantz is adamant that Judge Myers should have appointed someone to help him in his bankruptcy case because apparently the state court appointed someone to help him in those proceedings, this is of little significance to the Court.

Second, upon review of the record, it appears that Judge Myers did in fact grant Frantz the accommodations he requested *when they were timely filed*. At the January 16, 2018, hearing, Judge Myers reviewed all of Frantz's request and, by in large, granted all of them. He allowed Frantz extra time to review materials, provided certain accommodations in regard to note taking, questioning, testifying, reviewing notes, etc., and even allowed a third-party to assist Frantz during the hearing. Bk. Case, Dkt. 930, at 9–14. Frantz indicated Judge Myers addressed all of his questions and concerns and proceeded with the hearing. *Id.* at 14.

The March 6, 2018, hearing is a different matter. At the beginning of the hearing counsel for IIB brought to the bankruptcy court's attention the fact that just that morning Frantz had filed a request for standby counsel. Bk. Case, Dkt. 872. Judge Myers did not see this particular request/motion until it was presented to him at the hearing. Bk. Case, Dkt. 932, at 5. When it was his turn to speak, Frantz brought up his motion. Judge Myers noted that he had not had an opportunity to review the motion, that it was not noticed for a hearing, and therefore was not properly before him. Bk. Case, Dkt. 932, at 24. Frantz then stated that "as a matter of record . . . [he] object[ed] going forward without being able to talk to counsel." Bk. Case, Dkt. 932, at 25.

As a threshold matter, filing a motion at the 11th hour and expecting to get an

instantaneous ruling is wishful thinking. While there may be limited circumstances in which a motion is so pressing it must be dealt with the moment it is filed, this was not one of those motions. Legally, Frantz was not entitled to counsel. *See Locks v. Sumner,* 703 F.2d 403, 407–08 (9th Cir.1983) (the right to advisory counsel is "not of constitutional dimension"); *United States v. Kienenberger,* 13 F.3d 1354, 1356 (9th Cir.1994) (holding that a district court has discretion in deciding whether to appoint standby counsel). So even though Judge Myers did not rule on Frantz's motion at that exact moment, he did not need to. Not ruling at that time—or ruling against the motion in the future—was not a violation of Frantz's rights.

Furthermore, Judge Myers had no reason to grant the motion. As Judge Myers outlined on numerous occasions, Bk. Case Dkt. 930, at 10–11; Dkt. 932, at 24—and as this Court noted—Frantz has been able to "hold his own" in this case. He has filed thousands of pages of documents. The Court deals with a lot of pro se parties and can represent that Frantz's pleadings are better than most. The documents are detailed, understandable, and contain legal citations and analysis. The fact that the bankruptcy court and this Court ultimately do not agree with many of Frantz's conclusions does not diminish the fact that Frantz *can* represent himself effectively.

The standard for any request under § 1915—be it for case-counsel or simply standby counsel—is relatively straightforward.

As already noted, a person does not have a constitutional right to counsel in civil actions. *See Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). However, a court may, under "exceptional circumstances," appoint counsel for indigent civil litigants pursuant to

28 U.S.C. § 1915(e)(1). *Id.* When determining whether "exceptional circumstances" exist, a court must consider "the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." *Id.* Neither of these considerations is dispositive and instead must be viewed together. *Id.*

Judge Myers found—and this Court likewise finds—that Frantz did not demonstrate that he was likely to be successful on the merits of his motion, nor did he demonstrate an inability to articulate his position. Quite the opposite. Frantz has been able to write briefs, present evidence, and even question witnesses in this case. He has even prevailed on some motions he drafted pro se.

Yes, Frantz would have benefitted from counsel. He may have even fared better on certain motions with an attorney by his side. That said, such is not unique to Frantz. Most, if not all, pro-se litigants would benefit from an attorney, but that is not the standard. The standard is whether exceptional circumstance exist that would warrant appointment of counsel.

Here, Judge Myers did not abuse his discretion in effectively denying[15] Frantz's motion for standby counsel. First, it was untimely. Second, it was not supported by the facts and circumstances of the case.

The Court ends where it began. Judge Myers' action at the March 6, 2018, hearing

---

[15] It is not clear from the record before this Court, but it appears that Judge Myers never officially Denied Frantz's Motion. That said, he also clearly did not grant it.

will not be disturbed on appeal. The Court's analysis does not change when looking more broadly to Frantz's assertion that as an individual with a disability, Judge Myers should have afforded him more accommodations. To the contrary, it appears that throughout the bankruptcy proceedings, Judge Myers was extremely lenient with Frantz in granting extensions, modifications, and requests so that he would have a fair opportunity to present his case in Court. Judge Myers did not alter substantive rules (nor should he have), but from the record it is clear that he gave Frantz numerous accommodations as a pro se party and as an individual with a disability.

Judge Myer's denial of standby counsel at the March 6, 2018, hearing is AFFIRMED. Frantz's general claim of Judge Myer's "denial" of certain ADA accommodations is dismissed.

## V. CONCLUSION

The Court has reviewed the parties' briefs, the record in this case—including all applicable motions, briefs, hearings, orders, and transcripts from the underlying bankruptcy case—and finds the Judge Myers did not err in any respect or abuse his discretion.

Even if the Court would have done things differently than Judge Myers, and it is not saying it would have, but even if there were alternate outcomes to certain situations below, that does not mean that Judge Myers did things incorrectly. The potential of alternate outcomes is not the standard. The standard is whether "the court below committed clear error of judgment in the conclusion it reached upon weighing the relevant factors," *In re Stine,* 254 B.R. 244, at 248, and only if those conclusions were "(1) illogical, (2)

implausible, or (3) without support in inferences that may be drawn from the facts in the record," *Hinkson,* 585 F.3d at 1261–62, n.21, will the reviewing Court reverse.

In all matters, the Court finds that Judge Myers identified the correct legal rules, made factual findings that were free of errors, and never abused his discretion. In all respects, this Court AFFIRMS.

## VI. ORDER

**IT IS ORDERED:**

1.   The bankruptcy court's Order Authorizing Transfer/Sale of Estate Property (Bk. Case, Dkt. 668) and Denial of Appellants' Motion to Unwind (Bk. Case, Dkt. 881) is AFFIRMED.

2.   The bankruptcy court's Order Approving Sale of Real Property (Bk. Case, Dkt. 852) and denying Appellants' Motion for New Trial (Bk. Case, Dkt. 876) is AFFIRMED.

3.   The bankruptcy court's Order Approving Sale (of Counterclaims) (Bk. Case, Dkt. 956) is AFFIRMED.

4.   The bankruptcy court's Order Approving Motion for Interim Distribution (Bk. Case, Dkt. 957) is AFFIRMED.

5.   Appellants waived Appeal of the bankruptcy court's Order Denying Debtor's motion regarding cashier's check (Bk. Case, Dkt. 883).

6.   The bankruptcy court's denial of standby counsel (Bk. Case, Dkt. 872) is AFFIRMED. Any related arguments related to deficient ADA accommodations are dismissed.

7. The Clerk of the Court is directed to close the consolidated cases: 2:18-cv-00188-DCN, 2:18-cv-00189-DCN, 2:18-cv-00190-DCN, and 2:18-cv-00348-DCN.

DATED: March 25, 2020

David C. Nye
Chief U.S. District Court Judge